**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| GEOFFREY GROVE,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>E. K. MCDANIEL, *et al.,*<br>　　　　　　Defendants. | 3:17-cv-00245-RCJ-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Geoffrey Grove ("Grove") against Defendants E.K. McDaniel, Tara Carpenter, and Mark Sorci (collectively referred to as "Defendants").[2] Currently pending before the court is Defendants' motion for summary judgment. (ECF No. 37). Grove did not oppose the motion. For the reasons stated below, the court recommends Defendants' motion for summary judgment (ECF No. 37) be granted.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Grove is an inmate lawfully in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Lovelock Correctional Center ("LCC"). (*See* ECF No. 4.) Grove sues for events that occurred while incarcerated at LCC. (ECF No. 3 at 3.) Proceeding *pro se*, Grove filed the instant civil rights action pursuant to 42 U.S.C. § 1983, alleging one count and seeking injunctive and monetary relief. (*Id.*)

---

[1]    This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    Grove also named Assistant Warden William D. Sandie (*See* ECF No. 4.) Defendant Sandie was never served in this matter and was dismissed pursuant to FRCP 4(m) on April 3, 2019. (*See* ECF No. 27.)

Grove's Complaint alleges that Defendants McDaniel and Carpenter approved a rule discriminating against religions and allows one religion, Native Americans, to be treated differently and receive special treatment. (ECF No. 4 at 3.)  Grove claims Defendant Sorci enforces this rule. (*Id.*)  Grove asserts he had a Christian religious item hanging at the foot and/or head of his bed and Defendant Sorci told Grove to take it down or he would receive a notice of charges. (*Id.*)  Grove alleges Defendant Sorci allows Native Americans to hang their religious items at the foot or head of the bed, but Grove is not allowed to do the same. (*Id.*)

On March 10, 2017, Grove filed an informal grievance (Grievance No. 20063044179) alleging Defendant Sorci stopped at his cell and informed him to remove the cross he had at the foot of his bunk. (*See* ECF No. 37-19 at 2.)  Grove's grievance alleges the totality of Defendant Carpenter's participation in the alleged violation as signing Operating Procedure ("OP") 571 and does not mention Defendant McDaniel at all. (*Id.*)  Grove sought three remedies as part of his informal grievance: (1) for the OP and ARs to be changed so all religions are treated the same; (2) "fill administrative claim form" (stating the amount of claim as "$500+"); and (3) to not be retaliated against by "being transfored [sic]/hole or cell search by said C/O." (*Id.* at 4.)  The grievance was responded by nonparty R.E. East, stating:

> Your grievance alleges that on or about 3/10/17 (Night Shift), C/O Sorci was conducting a Cell Compliance Check and removed a religious artifact from your wall stating Housing Unit Rules prohibit the posting of said item, unless it is of Native American Origin. You state that you are Christian and that your Cross was removed.
>
> AR 810, OP 810, and the Housing Unit Rules for Phase II are currently under review, this is to [e]nsure that the posting of religious items are germane to all faiths and do not impact the Safety and Security of the Institution as a whole. Therefore, your Grievance is partially granted, whereas the topic is currently under review.

*See* ECF No. 37-20 at 3.  Defendant Carpenter approved the grievance as the grievance coordinator on April 10, 2017. (*Id.*)  On April 17, 2017, Grove signed for receipt of the

1  grievance and noted he disagreed with the response. (*Id.*)  Grove did not appeal the
2  informal response, not withstanding his disagreement.

3  Grove further claims that Defendants McDaniel and Carpenter violated his
4  constitutional rights by signing a rule that discriminates against his religion, Christianity.
5  (*Id.* at 4.)  Grove alleges that Native Americans have been treated differently than other
6  religions and have been given "special treatment," as only Native Americans can hang
7  religious items anywhere in their cell. (*Id.*)  Grove asserts that Defendant Sorci violated
8  Grove's rights by enforcing the policy and hindering Grove's ability to practice his
9  religion. (*Id.*)  Grove's allegations are based on violations of the Free Exercise Clause,
10 Equal Protection Clause, and Religious Land Use and Institutionalized Persons
11 ("RLUIP") Acts. (*Id.*) Pursuant to 28 U.S.C. § 1915(A)(a), the District Court entered a
12 screening order allowing Grove to proceed with his claim. (ECF No. 3.)

13 On October 7, 2019, Defendants filed a motion for summary judgment asserting:
14 (1) Grove failed to properly and completely exhaust available administrative remedies;
15 (2) Grove cannot show Defendants Carpenter and McDaniel personally participated in
16 the alleged constitutional violations; and, (3) Defendant Sorci is entitled to summary
17 judgment because he relied upon a properly promulgated regulation in the normal
18 course of his duties.  Grove was given notice of the motion pursuant to the requirements
19 of *Klingele v. Eikenberry,* 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland,* 154 F.3d
20 942 (9th Cir. 1988) (ECF No. 38); however, Grove failed to file a response.  The court
21 issued a second *Klingele* notice on November 6, 2019 (ECF No. 40), requiring Grove's
22 response to Defendants' motion be filed by November 27, 2019. Grove again failed to
23 file an opposition.

24 **II.     LEGAL STANDARD**

25 Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle*
26 *Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly
27 grants summary judgment when the record demonstrates that "there is no genuine
28 issue as to any material fact and the movant is entitled to judgment as a matter of law."

3

1  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify
2  which facts are material.  Only disputes over facts that might affect the outcome of the
3  suit under the governing law will properly preclude the entry of summary judgment.
4  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v.*
5  *Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" only where a
6  reasonable jury could find for the nonmoving party. *Id.*  Conclusory statements,
7  speculative opinions, pleading allegations, or other assertions uncorroborated by facts
8  are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509
9  F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th
10 Cir. 1996).  At this stage, the court's role is to verify that reasonable minds could differ
11 when interpreting the record; the court does not weigh the evidence or determine its
12 truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw.*
13 *Motorcycle Ass'n*, 18 F.3d at 1472.

14       Summary judgment proceeds in burden-shifting steps.  A moving party who does
15 not bear the burden of proof at trial "must either produce evidence negating an essential
16 element of the nonmoving party's claim or defense or show that the nonmoving party
17 does not have enough evidence of an essential element" to support its case. *Nissan*
18 *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately,
19 the moving party must demonstrate, based on authenticated evidence, that the record
20 forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as
21 to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285
22 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising
23 therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763
24 F.3d 1060, 1065 (9th Cir. 2014).

25       Where the moving party meets its burden, the burden shifts to the nonmoving
26 party to "designate specific facts demonstrating the existence of genuine issues for
27 trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).
28 "This burden is not a light one," and requires the nonmoving party to "show more than

the mere existence of a scintilla of evidence. . . .  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III.   DISCUSSION

### A.   Civil Rights Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)).  The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991).  Claims under section 1983 require a plaintiff to allege (1) the violation of a federally protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067.  Further, to prevail on a § 1983 claim, the

plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B.   Failure to Exhaust Administrative Remedies

Defendants argue that Grove did not properly exhaust available administrative remedies. (ECF No. 37 at 7-10.)  Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion is mandatory. *Porter v. Nussle,* 534 U.S. 516, 524 (2002).  The underlying premise of the exhaustion requirement is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo,* 548 U.S. 81, 90 (2006).  Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio,* 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford,* 548 U.S. at 90).  Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford,* 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca,* 747 F.3d 1162, 1169 (9th Cir. 2014).  "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56.  If material facts are disputed, summary judgment should be denied, and the district judge rather than a

jury should determine the facts." *Id.* at 1166.  The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino,* 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo,* 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino,* 747 F.3d at 1172).

### 1. NDOC's Inmate Grievance System

Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (*See generally* ECF No. 34 at Ex. C.)  The inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (*Id.* at 6.)  The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." (*Id.* at 7.)  NDOC staff is required to respond within forty-five days. (*Id.* at 8.)  An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. (*Id.*)

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation." (*Id.*)  The grievance is reviewed by an official of a higher level, who has forty-five days to respond. (*Id.* at 9.)  Within five days of receiving a dissatisfactory first-level response, the inmate may appeal to the second level, which is subject to still-higher review. (*Id.*)  Officials are to respond to a second-level grievance within sixty days, specifying the decision and the reasons the decision

7

was reached. (*Id.*)  Once an inmate receives a response to the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

### 2. **Exhaustion of Plaintiff's Claims**

Grove's claims against Defendants arise from an incident at LCC where he was confronted by Defendant Sorci and told he was not allowed to place his religious item at the foot and/or head of the bed. (ECF No. 4 at 3.)  Defendants argue Grove did not properly exhaust his available administrative remedies, as he failed to follow the grievance procedure outlined by AR 740. (See ECF No. 37.)  Specifically, Defendants contend that Grove did not properly complete the NDOC grievance process because he filed an informal grievance, which was partially granted, and in as much as Grove disagreed with the response at the informal level, he still had an obligation to comply with AR 740 sections 740.04, 740.05, and 740.06 to exhaust his remedies. (*Id.* at 9.)  Defendant argues the PLRA exhaustion requirement applies to all actions seeking redress for prison circumstances or occurrences, and Grove's claims are of the type requiring him to pursue and exhaust administrative remedies prior to seeking relief for Defendants' alleged First Amendment violations in federal court. (*Id.* at 10.)  Defendant further asserts that Grove is not excused from exhausting his administrative remedies as his informal grievance was only "partially granted" and Grove cannot reasonably argue the exhaustion requirement does not apply to his claims. (*Id.*)

Grove failed to file an opposition to Defendants' motion for summary judgment, despite two notices from the court of the motion. (*See* ECF Nos. 38, 40.)  However, Grove's Complaint states he exhausted his administrative remedies in accordance with AR 740.03(6) (A) and (C) because his grievance was partially granted. (ECF No. 4 at 8.)  For the reasons stated below, the court rejects Grove's claim that he exhausted his administrative remedies.  AR 740.03(6) states:

8

> 6. An inmate who is dissatisfied with the response to a grievance at any level may appeal the grievance to the next level, within the substantive and procedural requirements outlined herein, unless the action requested has already been Granted or Partially Granted at a lower level.
>
>> A. Administrators or employees of the institution shall automatically allow appeals without interference unless the grievance is granted or partially granted as stated in Section C of this AR or the grievance has multiple issues/claims or does not request a remedy that is within the authority of NDOC.
>>
>> C. If the Grievance is "Granted" at any level, the grievance process is considered complete and the inmate's administrative remedies exhausted, and the inmate cannot appeal the decision to a higher level. If the inmate files a grievance to a higher level after it has been granted at a lower level, the grievance will be screen out and the notation in the rejection form will state that the grievance has already been granted.

AR 740.03(6).

In the Ninth Circuit, an inmate has no obligation to appeal from a grant of relief, or a partial grant that *satisfies* him, in order to exhaust his administrative remedies. Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised. *Harvey v. Jordan,* 605 F.3d 681, 685 (9th Cir. 2010) (emphasis added); *see Abney v. McGinnis,* 380 F.3d 663, 669 (2d Cir.2004) ("A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion."). Once the prison officials purported to grant relief with which he was *satisfied*, his exhaustion obligation ended. His complaint had been resolved, or so he was led to believe, and he was not required to appeal the favorable decision. *Harvey,* 605 F.3d at 685 (emphasis added). Under *Harvey*, the obligation to exhaust is not excused when a prison official indicates that a grievance is resolved; rather, it is excused when the prisoner receives a *satisfactory* response. *Leonard v. McDaniel,* 3:15-cv-00031-RCJ-WGC, 2016 WL 8453642 at *5 (D. Nev. Oct. 31, 2016) (emphasis added).

In *Leonard,* the inmate submitted an informal grievance regarding a ceiling vent that had been blowing cool air into his cell for nearly two weeks. (*Id.*) The informal grievance was upheld because the problem had been addressed and cold air was no

9

longer blowing into Leonard's cell. (Id.)  Leonard signed the grievance indicating he *agreed with* the outcome of the informal grievance. (*Id.*) (emphasis added).  The court held that because the informal level grievance was upheld and Leonard signed the grievance indicating agreement with the outcome, Leonard was no longer required to pursue the first and second level grievances under *Harvey*.  In sum, because Leonard agreed with the grievance's outcome, he had exhausted his administrative remedies under *Harvey*.

This case is distinguishable from both *Harvey* and *Leonard*.  Here, while plaintiff did receive a "partial grant" on his informal level grievance, the undisputed evidence demonstrates Grove was *not* satisfied with the partial grant of his grievance.  The record shows on March 20, 2017, Grove submitted an informal level grievance (Grievance # 20063044179) in accordance with the provisions of AR 740. (*See* ECF No. 37-19.)  Grove's grievance was partially granted because "AR 810, OP 810, and the Housing Unit Rules for Phase II [were] currently under review, this is to insure that the posting of religious items are germane to all faiths and do not impact the [s]afety and [s]ecurity of the institution as a whole." (*See* ECF No. 37-20 at 3.)  On April 17, 2017, Grove signed the informal grievance indicating his disagreement with the grievance outcome. (*See id.* at 2.)  Moreover, the allegations in Grove's Complaint as well as the Complaint itself, clearly demonstrate Grove's dissatisfaction with the response to his informal grievance.  Accordingly, under *Harvey*, Grove was not satisfied with the outcome of his informal grievance and the record demonstrates this was not a favorable response.  Therefore, Grove was required to continue the exhaustion process and failed to do so.  Thus, there is no genuine dispute of material fact that Grove failed to exhaust administrative remedies before filing the instant case and the court finds that Grove failed to exhaust his administrative remedies pursuant to AR 740 prior to initiating this action.

The burden now shifts to Grove "to come forward with evidence showing that there is something in his particular case that made the existing and generally available

administrative remedies effectively unavailable to him." *Albino,* 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos,* 103 F.3d 767, 778 n. 5 (9th Cir. 1996)).  Grove failed to file an opposition to Defendants' motion for summary judgment, despite receiving two notices from the court to do so. (*See* ECF Nos. 38, 40.)  Accordingly, Grove provides no evidence to show that administrative remedies were unavailable to him.

Exhaustion plays a very important role in both the prison and court settings. "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" *Woodford v. Ngo,* 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan,* 503 U.S. 140, 145 (1992)).  Exhaustion also "promotes efficiency." *Id.*  Grove's failure to respond to Defendants motion for summary judgment does not provide any credible evidence that he exhausted his administrative remedies does not present the court with any evidence that such remedies were effectively "unavailable."

The PLRA's exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences. *Porter v. Nussle,* 534 U.S. 516, 520 (2002). Congress's purpose was to afford corrections officials the opportunity to internally address complaints before allowing the initiation of federal litigation. *Id.* at 525. Corrective action taken in response to inmate grievances may improve prison administration and satisfy the inmate, thereby obviating the need for litigation. *Id.*  For cases ultimately brough to court, adjudication could be facilitated by an administrative record clarifying the controversy. *Id.*  No unexhausted claim may be considered by the court. *Jones v. Bock,* 549 U.S. 199, 220 (2007).

Here, Grove alleges free exercise and equal protection claims and violations of the RLUIPA regarding the display of religious icons in prison cells against Defendants Carpenter, McDaniel, and Sorci. (*See* ECF No. 4 at 6.)  It is undisputed that Grove filed only one informal grievance and failed to exhaust the available administrative remedies

available through AR 740. (ECF No. 37.)  Grove's failure to pursue administrative remedies beyond the informal grievance process denied LCC officials and staff the opportunity to address Grove's complaints before Grove filed the instant action.  The failure also did not allow LCC officials to take action to improve prison administration which may have satisfied Grove and obviated the need for litigation.   Therefore, because all of Grove's claims against all named Defendants in this matter are unexhausted, none may be considered by the court. *Jones,* 549 U.S. at 220.  Thus, the court grants Defendants' motion for summary judgment.

Because the court finds that Grove failed to exhaust the claims in the Complaint as to each Defendant, the court need not address Defendants' alternate arguments.

## IV.    CONCLUSION

Based upon the foregoing, the court recommends Defendants' motion for summary judgment (ECF No. 37) be granted.  The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 37) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that judgment be entered accordingly.

**DATED**:  March 10, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**